The CHIEF JUSTICE
delivered the opinion of the court.
Regularly in cases of prize no evidence is admissible on the first hearing, except that which comes from the ship, either in the papers or the testimony of persons found on board.
If upon this evidence the case is not sufficiently clear to warrant condemnation or restitution, opportunity is given by the court, either of its own accord or upon motion and proper grounds shown, to introduce additional evidence under an oi’der for further proof.
In the case how before us some testimony was taken, preparatory to the first hearing, of persons not found on board *535 the ship, nor, indeed, in any way connected with her. This evidence was properly excluded by the district judge, and the hearing took place on the proper proofs.
Upon that hearing an order for further proof was made, allowing the libellants and captors, on the one side, and the claimants, on the other, to put in additional evidence; and such evidence was put in accordingly on both sides.
The preparatory evidence on the first hearing consisted of the depositions of the master of the ship, the mate, and one seaman. No papers were producéd,i for none were found on board; a circumstance explained by the statement of the master, that all the papers belonging to the vessel, except the lightermen’s receipts for the cargo, were with the English consul aud the consignees of the ship at Matamoras.
The depositions established the neutral ownership of the ship and cargo. They proved' that the Sir William Peel was a British merchantman ; that she had brought a"general cargo, no part of which was contraband, from Liverpool to Matamoras;- that this cargo, except an inconsiderable portion, had been delivered to the consignee at the latter port; that the cotton found on board was part of her return cargo; that it was owned by neutrals, and had a neutral' destination ; and that the ship, when captured, Was in Mexican waters, well south of the boundary between Mexico and Texas.
This proof clearly required restitution. The order for further proof was, probably, made upon the rejected depositions, which, though inadmissible as evidence for condemnation, may have been allowed to be used as affidavits on the motion for the order.
The further proof, when taken, was conflicting.
The weight of evidence, we think, put the vessel, at the time of capture, in Mexican waters; but if the ship or cargo was enemy property, or either was otherwise liable to condemnation, that circumstance, by itself, would not avail the claimants in a prize court. It might constitute a ground of claim by the neutral power, whose territory had suffered *536 trespass, for apology or indemnity.. But neither an enemy, nor-a neutral, acting the part of an enemy, can demand restitution of captured'property on the sole ground of capture in neutral waters.
We must, therefore, look further into the case.
There is some evidence which justifies suspicion. Several witnesses state facts which tend to prove that the Peel was in the employment of the rebel government; and that part, at least, of the cotton laden upon her, as return -cargo, was in fact rébel property.
There are statements,-on the other hand, which make it probable that the Peel was in truth what she professed to be, a merchant steamer, belonging to neutral merchants, and nothing more; that her cargo was consigned in good faith by neutral owners for sale at Matamoras, or to be conveyed across the river and’ sold in Texas, as it might lawfully be,not being contraband; that tlie'cotton was purchased by neutrals, and on neutral account, with the proceeds of. the cargo or other money. ...
In this conflict of evidence we do not think -ourselves warranted in condemning, or in quite excusing the vessel or her cargo. We shall, therefore, affirm the decree by the District Court, and direct restitution, without costs or expenses to either party as against the other.
Affirmance and direction accordingly.